**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAVID SEIDER,                                              Case No. 1:11-cv-153

        Plaintiff,                                        Beckwith, J.
                                                          Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff David Seider filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

In January 2008, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging a disability onset date of November 16, 2007, due to physical impairments.  (Tr. 116-22).  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An administrative hearing was held on October 22, 2009.  (Tr. 31-71).  At the hearing, ALJ Deborah Smith heard testimony from Plaintiff

and Janet Chapman, an impartial vocational expert.  On November 18, 2009, the ALJ denied Plaintiff's application in a written decision.  (Tr. 9-30).

The record on which the ALJ's decision was based reflects that Plaintiff completed the tenth grade and has past relevant work as a truck driver.  (Tr. 24, 38). Plaintiff was born in 1966 and was 41 years old at the time his application was filed. Upon consideration of the record, the ALJ found that Plaintiff had the following severe impairments: "orthopedic problems with history of surgeries and chronic pain, and Hepatitis C."  (Tr. 18).

Despite these impairments, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, with the following exceptions:

> He can lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of about 6 hours in an 8-hour work day; sit for a total of about 6 hours in an 8-hour work day; occasional push/pull with the bilateral upper extremities; no repetitive, frequent, or constant reaching bilaterally; never climb ladders/ropes.

(Tr. 15).  Based upon testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy.  (Tr. 24-25).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI benefits.  (Tr. 24).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues primarily that the ALJ erred in formulating his RFC by failing to account for and include limitations from Plaintiff's chronic pain.  Specifically, Plaintiff argues that the ALJ

erred in failing to give controlling weight to the opinion of Plaintiff's treating physician. Plaintiff further argues that the ALJ erred in evaluating Plaintiff's credibility and subjective complaints of pain.  As discussed below, the Court finds no error requiring reversal or remand.

### II.  Analysis

### A.  Judicial Standard of Review

To be eligible for DIB or SSI a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B. Specific Assignments of Errors**

*1. Weight to the treating physician.*

Plaintiff's first assignment of error asserts that the ALJ erred in failing to give controlling weight to the opinion of his treating physician, Dr. Green. The record indicates that Plaintiff treated with Dr. Green, a primary care physician, from February 2004 through September 2009. (Tr. 353-460, 495). Dr. Green treated Plaintiff for various medical conditions including, hypertension, Hepatitis C, chronic shoulder pain, and low back pain. *Id.* In a September 2009 letter, Dr. Green opined that Plaintiff was "functionally totally disabled from his commination [sic] of his medical problems including nerve entrapment in his right shoulder, degeneration of both shoulder joints, arthritis in his low back, Hepatitis C, and hypertension." (Tr. 495). In support of this determination, Dr. Green further stated:

> Since his last assessment his conditions have worsened. With lack of activity his degenerative disc disease in his spine he has become symptomatic. This is causing him severe problems with ambulation and prolonged sitting. The present time the longest this patient considered [sic] without interruption is approximately an hour and a half. He continues to suffer from chronic pain in both shoulders and his right worse than left. He has had 5 surgeries on his right shoulder and 2 surgeries on his left. Multiple consultations with orthopedic and neurosurgeons have found there is no surgical correction to this problem it is a permanent injury. He has no functional use of his shoulders because of this. The patient also suffers from Hepatis C, liver disease and hypertension both requiring medical monitoring and treatment.

(Tr. 495).

The ALJ gave "little weight" to Dr. Green's conclusion that Plaintiff is disabled. (Tr. 22). The ALJ found that Dr. Green's opinions were inconsistent with and unsupported by clinical findings, his own treatment notes and the objective evidence of

record.  (Tr. 21-22).  Upon careful review, the undersigned finds the ALJ's decision to be substantially supported in this regard.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'"  *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).  If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.  *Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion."  20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see *also West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th

6

Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Furthermore, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)", opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, Plaintiff argues that Dr. Green's opinions were entitled to controlling weight because of his longitudinal treatment history with Plaintiff. Plaintiff further asserts that Dr. Green referred Plaintiff to numerous specialists for treatment, all of whom agree that Plaintiff suffers from "a serious and severe pain problem." (Doc. 8 at 20). Contrary to Plaintiff's assertion, the ALJ's decision indicates that he properly considered Dr. Green's disability finding in accordance with agency regulations and controlling law.

First, the ALJ gave "good reasons" for rejecting Dr. Green's findings, and such reasons are substantially supported.  *See Wilson*, 378 F.3d at 544 (The ALJ must articulate "good reasons" for not giving weight to a treating physician's opinion and such reasons must be based on the evidence of record).  As noted by the ALJ, Dr. Green's findings are not supported by objective evidence and are inconsistent with other evidence or record.  The evidence of record does not substantiate the severity of Plaintiff's degenerative disc disease as found by Dr. Green.  Notably, in November 2005, Dr. Stambough, an orthopedic surgeon, reviewed an MRI of Plaintiff's cervical spine done in late 2005 and found the results to be normal, noting only mild joint changes.  (Tr. 17, 200-01).  Plaintiff underwent an additional cervical MRI in December 2007 which showed "mild" degenerative changes and small disc protrusions without neural compression.  (Tr. 304).  Furthermore, physical examinations showed normal motor strength, no atrophy, adequate range of motion, normal gait, negative straight leg raising, and no sensory or reflex deficit.  (Tr. 304).

Next, with respect to Plaintiff's shoulder and arm pain, Dr. Green's findings are inconsistent with the objective medical evidence.  In May 2008, Dr. Green diagnosed right arm radiculpathy and chronic right arm pain due to nerve entrapment.  (Tr. 339).  However, the record does not indicate that Dr. Green performed any clinical or diagnostic testing to confirm these diagnoses.  To the contrary, in February 2008, upon examination, Dr. Berger, a neurosurgeon, noted that Plaintiff's neck movements were uncomfortable but "did not produce radicular pain."  (Tr. 302).  Dr. Berger reviewed a December 2007 MRI of Plaintiff's neck and found evidence of degenerative disc disease, however, he indicated that this would not cause Plaintiff's alleged arm pain.

8

(Tr. 302).  Upon examination, Dr. Berger noted that Plaintiff's neck was tender, but found no evidence of radicular pain and no spinal deformities.  (Tr. 302).  Plaintiff had no difficulty walking around the examination room, was able to heel and toe walk, and could stand on either foot.  (Tr. 302).  Dr. Berger further reported that Plaintiff had full range of motion in his shoulders, and rotation and movement of his shoulders did not cause significant pain.  (Tr. 302).  Dr. Berger also found that Plaintiff was neurologically intact with normal reflexes, no muscle weakness, and no sensory loss (Tr. 302).  He ordered an EMG of the right arm, however, as correctly noted by the ALJ, "there is no evidence that [Plaintiff] followed through with that testing or than the [Plaintiff] had any other testing consistent with nerve damage."  (Tr. 21, 302).

Additionally, Plaintiff presented to the emergency room in March, June and August 2009 complaining of chronic shoulder pain and low back pain.  (Tr. 461-71, 472-75, 476-94).  On each occasion, Plaintiff complained of chronic pain, reported that he had run out of his prescriptions, and requested pain medication.  Examination findings were generally normal.  For example, the ER physician's "impression" from Plaintiff's June 19, 2009 ER visit was mild narcotic and benzodiazepine withdrawal "in a patient who does not need to be hospitalized."  (Tr. 464).  In this instance, Plaintiff's medications were refilled and instructed to follow-up with an outpatient clinics.  (Tr. 464).  Similarly, treatment notes from Plaintiff's August 2009 ER visit, indicate that Plaintiff presented to the ER with low back pain because he was out of his OxyContin.  (Tr. 474).  Upon examination, his vital signs were all in the normal range, he had "no new injuries and no red flag symptoms with a normal neurological exam."  *Id.*  He was

given Valium and Percocet, and again instructed to follow-up with his primary care physician. (Tr. 474).

Furthermore, although Dr. Green purportedly indicated that Plaintiff's Hepatis C and hypertension affect his ability to work, the ALJ correctly concluded that the evidence of record does not indicate that such impairments result in any work-related limitations. As noted by the Commissioner, the ALJ acknowledged that Plaintiff had experienced a slight elevation in his liver enzymes on one occasion in early 2008, but this appeared to cause no limitations. (Tr. 20). Dr. Green noted that Plaintiff was asymptomatic and "seem[ed] to be doing well." (Tr. 20, 366-67). Notably, Dr. Green did not indicate that Plaintiff's Hepatitis C symptoms caused any limitations in his treatment notes. (Tr. 366-67). Moreover, Dr. Green's treatment notes indicate that Plaintiff's blood pressure was in the normal range or slightly elevated.

As noted above, to be entitled to controlling weight, a treating physician's opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and consist with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). Here, other than asserting that Dr. Green's findings should be given deference in light of his longitudinal treatment history, Plaintiff fails to cite to any objective medial evidence in support of Dr. Green's extreme and conclusory opinions. *See Anderson*, 195 Fed. Appx. at 370 (An ALJ need not credit a treating physician opinion that is conclusory and unsupported). In this case, the ALJ thoroughly discussed and evaluated the medical

evidence of record and reasonably concluded that Dr. Green's disability finding was not entitled to controlling weight.[1]

Furthermore, contrary to Plaintiff's assertion, the ALJ's RFC finding is also substantially supported. As noted by Plaintiff, the ALJ thoroughly evaluated and discussed the medical evidence of record. In reaching his conclusion that Plaintiff could perform light work, the ALJ relied on an assessment by Dr. Morton, a state agency physician, who found Plaintiff capable of performing light work. Dr. Morton reviewed Plaintiff's medical file in May 2008 and determined that Plaintiff was capable of performing light work that did not include climbing ladders, ropes, or scaffolds and only occasionally pushing/pulling with his right arm. (Tr. 345-46). In support of his findings, Dr. Morton noted that an MRI showed mild degenerative disc disease in the mid cervical area. Dr. Morton further noted the mostly normal clinical examination findings in the record, including the absence of any spinal deformity or radicular pain, and Plaintiff's full shoulder range of motion without pain. (Tr. 302, 346). Dr. Morton further found:

> [Plaintiff's] statements are credible in nature but not in severity. He alleges that he cannot use his right arm due to nerve damage, but testing including EMG/NCV shows no evidence of any radiculopathy or plexopathy. He has minimal suggestion of early, mild right median sensory neuropathy.

---

[1] Plaintiff also appears to assert that the ALJ should have recontacted Dr. Green to clarify Plaintiff's functional limitations caused by Hepatitis C. (Doc. 8 at 13). See 20 C.F.R. § 404.1512(e) (setting forth how the Agency proceeds with re-contacting a claimant's treating physician when the evidence is inadequate for the Agency to determine whether the claimant is disabled.). However, such a duty to "re-contact" occurs only when the ALJ does not have sufficient information to determine if a claimant is disabled. *See Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 156 n.3 (6th Cir. 2009). *See also Littlepage v. Chater*, 134 F.3d 371, 1998 WL 24999, at *1 (6th Cir. Jan. 14, 1998) (the ALJ's duty to re-contact a treating source was not triggered when all of the treatment notes and information upon which the doctor based his opinion were in the record). Here, the treatment notes from Dr. Green are part of the record, and Plaintiff does not assert that such records are incomplete.

(Tr. 349).

The ALJ determined that the evidence of record was consistent with the findings of Dr. Morton with respect to Plaintiff's physical ability to perform work-related activities. Thus, unlike Dr. Green's opinions, the ALJ found that the opinion of Dr. Morton was supported by and consistent with the record as a whole. As outlined above, the undersigned agrees that Dr. Morton's assessment was consistent with the objective medical evidence of record. Under these circumstances, substantial evidence supports the ALJ's decision. *See* 20 C.F.R § 404.1527(d)(4) (ALJ may place great weight on an RFC made by a non-examining state agency physician if it is consistent with the medical record). *See also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("In appropriate circumstances, opinions from [state agency physicians] . . . may be entitled to greater weight than the opinions of treating or examining sources.").

Where, as here, there is a conflict in the medical evidence as to Plaintiff's functioning, it is the ALJ's responsibility to resolve such conflicts. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform work-related activities. As outlined above, the ALJ's resolution of this

conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence.

   *2. The ALJ's evaluation of Plaintiff's credibility and subjective complaints of pain.*

   Plaintiff further argues that the ALJ did not adequately consider his pain and credibility.   Specifically, Plaintiff contends that the ALJ erred in failing to credit his subjective complaints of disabling pain.  Plaintiff further asserts that the ALJ improperly "played doctor" in making the determination that Plaintiff's impairments did not produce the type and severity of pain alleged.  Plaintiff's assertions lack merit.

   It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers* v. *Comm'r of Social Sec*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted).   In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  In evaluating complaints of disabling pain, the fact-finder will first examine "whether there is objective medical evidence" that "confirms the severity of the alleged pain" or "can reasonably be expected to produce the alleged disabling pain." *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken."  *Id.* (citing 20 C.F.R. §404.1529(c)(3)).[2]

_____

   [2] The regulations provide that the ALJ's credibility decision must include consideration of the following factors:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on

13

The ALJ 's decision indicates that he carefully considered Plaintiff's testimony and complaints of disabling pain, and properly found that there was no objective evidence to support Plaintiff's allegations.  (Tr. 16-23).  *See also Walters*, 127 F.3d at 531.  As detailed above, the objective evidence fails to support Plaintiff's complaints of disabling pain.  *See Thoroughman v. Chater*, 91 F.3d 144, 1996 WL 316518, at *1 (6th Cir. 1996) (As the ALJ cited to the fact that there is no objective medical evidence to support Plaintiff's complaints of disabling pain, the ALJ's credibility determination was proper).

In evaluating Plaintiff's credibility, the ALJ found that the severity of his disabling pain and other limitations was not substantiated by the objective evidence in the record. (Tr. 20 ).  Plaintiff argues that such a finding was "meaningless boilerplate" language and failed to properly address Plaintiff's complaints of pain.  Plaintiff's argument is not well taken.  Plaintiff's statement of errors acknowledges that the ALJ thoroughly identified and discussed the medical evidence of record.  After a lengthy discussion of the medical evidence, the ALJ found that Plaintiff's subjective complaints of pain were unsupported by the record.  (Tr. 23).  As noted above, physical examinations yielded primarily positive or normal results, an MRI of Plaintiff's cervical spine revealed only mild degenerative disc disease, and there was no evidence of nerve damage associated with Plaintiff's arm and shoulder pain.

The ALJ also found Plaintiff's credibility to be diminished by the inconsistencies in the record with respect to his substance abuse.  (Tr. 23).  In addition, the ALJ properly considered Plaintiff's daily activities and conservative treatment history.  As noted by the

_____

his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

14

Commissioner, since stopping pain management treatment in March 2006, Plaintiff's treatment has consisted primarily of prescription pain medication.  In light of the foregoing, the undersigned finds the ALJ properly evaluated Plaintiff's credibility and such determination is supported by substantial evidence and should not be disturbed.[3]

In sum, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence.  *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible.  The ALJ's credibility finding is entitled to deference and thus should be affirmed.  *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

## III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 _s/Stephanie K. Bowman_____
Stephanie K. Bowman
United States Magistrate Judge

---

[3]  Additionally, Plaintiff's assertion that the ALJ "played doctor" is also not well-taken.  The ALJ's decision notes that Dr. Green prescribed Xanax in spite of stating an opinion that Plaintiff did not have mental condition.  As such, Plaintiff asserts the ALJ improperly determined the proper use of Xanax.  Notably, Plaintiff does not challenge the ALJ's findings with respect to his mental impairments, nor assert that he in fact suffers from a severe mental impairment.  Furthermore, the record indicates that Plaintiff was prescribed Xanax for anxiety, yet he has not received mental health treatment or been diagnosed with an anxiety disorder.  (Tr. 336).  Contrary to Plaintiff's assertion, the ALJ's findings were based on the medical evidence and medical opinions of record, and were not derived from the ALJ's own interpretation of the medical evidence.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAVID SEIDER,                                    Case No. 1:11-cv-153

        Plaintiff,                              Beckwith, J.
                                                 Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**


      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).